***NOT FOR PUBLICATION***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RYAN BROWN,<br><br>         Plaintiff,<br><br>    v.<br><br>TOWNSHIP OF NEPTUNE; OFFICER JOHN H. JACKSON; JOHN DOE; JOHN DOE 1; and ROBERT H. ADAMS,<br><br>         Defendant. | Civil Action No.: 11-7162 (FLW)<br><br>**OPINION** |

**WOLFSON**, **United States District Judge**:

   This civil rights action, brought by *pro se* plaintiff Ryan Brown ("Plaintiff"), arose out of Plaintiff's arrest allegedly for impersonating an officer. Presently before the Court is a motion for summary judgment filed by the Township of Neptune ("Neptune"), which motion is joined by co-defendants Officer John H. Jackson ("Officer Jackson") and Police Chief Robert H. Adams (collectively "Defendants"). In his Complaint, Plaintiff alleges that Defendants violated his constitutional rights by 1) falsely arresting him; 2) unlawfully searching his vehicle; 3) abusing the process; and 4) failing to afford him his equal protections under the law. Plaintiff also asserts claims under state law for intention infliction of emotional and psychological distress ("IIEPD"); defamation, and other civil rights violations. For reasons set forth below, the Court **GRANTS** Defendants' motion for summary judgment on all counts of the Complaint.

1

## BACKGROUND & PROCEDURAL HISTORY

The following facts are not disputed unless otherwise noted. On December 31, 2011, while Plaintiff was driving in Neptune Township, he was pulled over by Officer Jackson for having tinted windows. *See* Def.'s Statement of Undisputed Facts ("Def.'s Statements"), ¶¶ 1-3, 5. Plaintiff presented Officer Jackson with an expired City of Long Branch Police Department Identification Card ("I.D. card"), along with other required documents. *Id.* at ¶ 4. This I.D. card indicated that Plaintiff worked as a Special Law Enforcement Officer II. *Id.* Plaintiff claims that he presented this card to obtain "professional courtesy." *Id.* at ¶ 26. Officer Jackson questioned Plaintiff about his employment with Long Branch Police Department ("LBPD"), to which Plaintiff first responded that he was a current employee. *Id* at. ¶¶ 7, 15. Upon further inquiry by Officer Jackson, Plaintiff declared that he only worked part time at LBPD, and later, he corrected that he was on disability. *Id.* Finally, after being asked directly a third or fourth time, Plaintiff admitted that he had not worked at LBPD for two years. *Id.*

Thereafter, Plaintiff was arrested on the scene by Officer Jackson for impersonating a police officer. *Id.* at ¶ 8. Incident to his arrest, Plaintiff was asked by Officer Jackson and Officer Doe to consent to a car search; Plaintiff gave his consent after the officers informed him that they were securing a warrant. *Id.* at ¶ 10. A search of Plaintiff's car revealed no significant findings. *Id.* Plaintiff was then brought to police headquarters, where he was processed, advised of his Miranda rights, and then interviewed. *Id.* at ¶¶ 11, 21. Plaintiff waived his Miranda rights while in custody and before he was questioned. *Id.* According to Plaintiff, during his interview with an officer, Plaintiff explained that he presented the I.D. card, as a "courtesy." *Id.* at ¶ 26. After questioning, Plaintiff was released and issued a summons.

In particular, Plaintiff was charged with impersonating a police officer, in violation of N.J.S.A. 2C:28-8(b) and for having tinted windows in violation of N.J.S.A. 39:3-75. The impersonating charge was later downgraded to impersonating a public servant, pursuant to N.J.S.A. 2C:28-8(a)." Def's Statements, ¶ 12. Plaintiff was tried in a non-jury proceeding for these charges. The municipal court found that Plaintiff had not been coerced to consent to a car search, *Id.* at ¶ 27; that Plaintiff had been read his Miranda rights and voluntarily answered police questions, *Id.* at ¶ 28; and that Plaintiff intended to mislead the Officers by presenting his expired I.D. Card. *Id.* at ¶ 30. The municipal court, therefore, held that Plaintiff was "guilty of having improperly tinted windows and of impersonating a public servant or law enforcement officer." *Id.* at ¶ 31. Plaintiff appealed his decision to the superior court, and on July 23, 2013, that court affirmed the conviction. *Id.* at ¶ 33. Plaintiff's conviction has not been overturned. *Id.* at ¶ 34.

On December 9, 2011, Plaintiff filed the instant Complaint against defendants Neptune, the Chief of Police, Robert H. Adams ("Chief Adams"), and Officer Jackson. It appears Chief Adams is being sued in his official capacity under a *respondeat superior* theory, while Officer Jackson is named in his individual capacity. The Complaint include the following causes of action:

- Count One asserts that Defendants falsely arrested Plaintiff "in violation of the Fourth Amendment under 41 U.S.C. [§] 1938." *Id*. at ¶ 35.

- Count Two asserts that "Plaintiff's rights to Equal Protection under the Fourteenth Amendment" were violated. *Id.*

- Count Three charges Defendants with unlawful search "by means of coercion in violation of Plaintiff's Equal Protection rights under the Fourth and Fourteenth Amendments." *Id.*

- Count Four asserts that Defendants failed to Mirandize Plaintiff in violation of his Fifth Amendment rights and "pursuant to *Miranda v. Arizona*." *Id.*

3

- Count Five asserts a cause of action for abuse of process. *Id.*

- Count Six asserts "negligent and deliberate indifference toward the constitutional rights of the general public."[1] *Id.*

- Count Seven asserts a cause of action for intentional infliction of emotional and psychological distress. *Id.*

- Count Eight asserts a claim for defamation. *Id.*

- Count Nine asserts a cause of action under the New Jersey Civil Rights Act. *Id.*

Plaintiff submitted a two-page response to this motion for summary judgment. Substantively, Plaintiff does not present any legal arguments. Rather, he reiterates his complaints against the defendants by repeating certain allegations of his pleadings. Those factual accusations are largely unhelpful to the disposition of Defendants' legal arguments made in their motion. Of note, however, Plaintiff suggests that if I were to dismiss his claims, I should provide him with an additional opportunity to amend his Complaint, without any indications as to what new amendments he proposes. Regardless, as delineated below, because most of Plaintiff's claims are dismissed as a matter of law, the Court declines to permit Plaintiff to amend his Complaint.

## DISCUSSION

**I.    Standard of Review**

Courts will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

---

[1] This is an unrecognizable cause of action. Indeed, no such claim exists under §1983 jurisprudence. Additionally, Plaintiff has no standing in this context to bring a claim on behalf of the public. And, more importantly, the Court cannot discern any harm suffered by the public because of Plaintiff's alleged improper arrest. For these reasons, this claim is dismissed.

of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the non-moving party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1985). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *See id*. at 252. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts "in the light most favorable to the [non-moving] party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion." *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party then carries the burden to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324. Moreover, the non-moving party may not rest upon the mere allegations or denials of its pleading. *Id*. at 324; *Maidenbaum v. Bally's Park Place, Inc.*, 870 F. Supp. 1254, 1258 (D.N.J. 1994). The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. A mere "scintilla of evidence . . . will be insufficient." *Anderson*, 477 U.S. at 252.

**II.   Township of Neptune and Chief Adam**

In his Complaint, Plaintiff does not assert any direct claims against Neptune. Instead, Plaintiff collectively asserts his claims against all defendants, without differentiating at which the particular defendant to whom each claim is directed.  Moreover, Plaintiff does not assert that Chief Adams was present during his arrest or the subsequent interview at the police station.  Rather, it appears Plaintiff sues Chief Adams in his official capacity as the Chief of Police.

"Official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). A suit against

a chief of police, for example, in his official capacity is essentially a claim against the police department and, by extension, the municipality. In the § 1983 context, a municipal department and the municipality are not separate legal entities under the law, and thus, they cannot both be named as parties to an action. *See, e.g., Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir. 1997); *Adams v. City of Camden*, 461 F. Supp. 2d 263, 266 (D.N.J. 2006) (". . . police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity."). In that regard, an officer sued in an official capacity cannot be a named party in an action asserting identical claims against the municipality. *See, e.g.*, *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988); *Duran v. Warner*, No. 07-5994, 2013 WL 4483518, at *6 (D.N.J. Aug. 20, 2013) (dismissing official capacity claims against Chief of Police where identical claims were asserted against the municipality); *Owens v. City of Atlantic City*, No. 05-3132, 2008 U.S. Dist. LEXIS 47584, at *39-40 (D.N.J. Jun. 6, 2008) (same). Therefore, because Plaintiff asserts a Monell claim against Neptune, claims against Chief Adams are dismissed.

In order for Plaintiff to prove his §1983 claims against a local government or municipality, such as Neptune, he must establish municipal liability under § 1983: "[A] plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990); *Watson v. Abington Twp.*, 478 F.3d 144, 156 (3d Cir. 2007). A plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the plaintiff's injury. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690-91 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent

official policy, inflicts the injury" complained of); *Mulholland v. Government County of Berks, Pa.*, 706 F.3d 227, 237 (3d Cir. 2013).

In this case, unless Plaintiff can point to a particular policy or custom instituted by Neptune that caused the alleged constitutional violations, Plaintiff cannot succeed on his Monell claim. Plaintiff has failed to do so here; while Plaintiff claims, in a conclusory fashion in Count Six, that Neptune "failed to take sufficient remedial action against" Jackson, and that its "policies and customs" led to Plaintiff's false arrest, Plaintiff did not allege, nor, on this motion, does he present any specific policy or custom that caused the alleged constitutional tort.  Accordingly, Neptune's motion for summary judgment is granted.

## III.  Officer Jackson[2]

### A. False Arrest (Count I) and NJ Civil Rights (Count IX) [3]

In Count I, Plaintiff alleges that he was falsely arrested because Officer Jackson unlawfully charged him with impersonating an officer without any probable cause. In Count IX, Plaintiff asserts a state law claim for the violation of his civil rights based on the same allegations as set

---

[2] Despite Plaintiff claiming, in his Complaint, that Officers John Doe and John Doe I were also present at his arrest, Plaintiff has not named these officers.  Therefore, the Court will not analyze Plaintiff's claims against them.  Regardless, however, the analyses that the Court will apply as to Officer Jackson's claims equally apply to claims against the John Doe officers.

[3] The NJCRA was modeled after § 1983, and thus courts in New Jersey have generally looked at claims under the NJCRA "through the lens of § 1983." *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443-44 (D.N.J. 2011); *see also Chapman v. New Jersey*, No. 08-4130, 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart...."); *Armstrong v. Sherman*, No. 09-716, 2010 WL 2483911, at *5 (D.N.J. Jun. 4, 2010) ("[T]he New Jersey Civil Rights Act is a kind of analog to section 1983 . . . ."); *see generally Hedges v. Musco*, 204 F.3d 109, 121 n.12 (3d Cir. 2000) (concluding that New Jersey's constitutional provisions concerning search and seizures are interpreted analogously to the Fourth Amendment).

forth in Count I, pursuant to the New Jersey Civil Rights Act ("NJCRA"). I find that *Heck* bars Plaintiff from bringing his false arrest claim.

The Supreme Court in *Heck v. Humphrey* pronounced that civil claims for deprivation of rights, pursuant to 42 U.S.C. § 1983, cannot be brought if they would invalidate a criminal conviction. 512 U.S. 477, 486-87 (1994). In that regard, the essential inquiry, here, is whether the claims asserted by Plaintiff would "necessarily imply the invalidity of [his] conviction." *Wallace v. Kato*, 549 U.S. 384, 398 (2007) (Stevens, J., concurring) (quoting *Heck*, 512 U.S. at 486-87).

To state a Fourth Amendment claim for false arrest, a plaintiff must allege that: (1) there was an arrest; and (2) the arrest was made without probable cause. *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988). "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Adams v. Officer Eric Selhorst*, 449 Fed. Appx. 198, 201 (3d Cir. 2011) (citing *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995)). While in some circumstances the success of a § 1983 claim for false arrest will not invalidate a plaintiff's conviction, in cases where the conviction is for the same crime as the underlying arrest, probable cause is established by virtue of his conviction of that offense. *See Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995) ("[I]f [a plaintiff] is convicted and evidence is presented by the prosecution at his criminal trial which is a direct or indirect product of one or more of his arrests, then his section 1983 damage claims challenging the validity of his arrests would appear to undermine the validity of his conviction and hence be barred by *Heck*.").

Here, Plaintiff was convicted of having tinted windows and impersonating a public servant. This conviction means that Officer Jackson had probable cause to effectuate Plaintiff's arrest. Plaintiff's false arrest claim is based on his allegations that Officer Jackson lacked probable cause to arrest him. Therefore, if Plaintiff's false arrest claim were successful, it would undermine Plaintiff's conviction. Accordingly, Plaintiff's false arrest claim, under state or federal law, is barred by *Heck*.

**B. Equal Protection (Count II)**

In Count II, Plaintiff asserts that Officer Jackson failed to afford him equal protections under the law pursuant to the Fourteenth Amendment. Compl. ¶ 13. However, the allegations supporting his equal protection claim are the exact same facts as those alleged in other substantive counts, i.e., false arrest, abuse of process, illegal search and seizure, failure to Mirandize. Thus, it appears that Plaintiff did not intend to bring an equal protection claim, and moreover, he does not allege any of the elements of such a claim.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (internal quotations and citations omitted). Accordingly, equal protection rights are violated when similarly situated persons are treated dissimilarly. *Cleburne v. Cleburne*, 473 U.S. 432, 439 (1985). For a plaintiff to succeed on an equal protection claim, he must demonstrate (1) a disparate impact, and (2) the intention to discriminate. *Arlington v. Metropolitan*, 429 U.S. 252, 264-66 (1977). In addition, the

plaintiff must show that he is either a member of a suspect class. *Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450, 457-58 (1988).

Here, Plaintiff has not alleged, let alone established, any of these requirements, and therefore, his equal protection claim must fail. Indeed, while Plaintiff uses the term "equal protection" in Count II, he does not present any evidence to prove his claim in this context. Crucially, Plaintiff has not even indicated a protected to class to which he belongs, if one at all. Accordingly, Count II is dismissed.

### C. Illegal Search (Count III)

In Count III, Plaintiff brings a claim for illegal search and seizure. In that connection, Plaintiff complains that the consent that he provided to Officer Jackson for the search of his car was coerced. In addition, Plaintiff also asserts that his equal protection rights were violated as a result of this coercion. Based on Plaintiff's use of the term "equal protection," Defendants move for summary judgment on the sole basis that Plaintiff failed to establish an equal protection claim. However, while the Court has found that Plaintiff's equal protection claim has no merit, I find that Count III also asserts an illegal search and seizure claim. While Defendants' summary judgment brief does not address this later basis, this cause of action is nevertheless dismissed.

To be clear, there is no dispute that Officer Jackson searched Plaintiff's vehicle by consent, not by means of a search incident to arrest.[4] Specifically regarding the consent to search, the Municipal Judge, in Plaintiff's criminal proceedings, found that Plaintiff's insistence of coercion on the part of Officer Jackson has no merit and that Plaintiff consented to the search of his vehicle. *See* Trial Tr. dated July 26, 2012, T57:16-T58:11. Indeed, the Judge stated that, after viewing a

---

[4] Incidentally, the search did not result in finding any evidence of criminal activity and thus, nothing related to the search was used in Plaintiff's criminal proceedings.

video tape of the incident at issue, she "didn't see any coercion at all in terms of searching the vehicle." *Id.* This finding is dispositive of Plaintiff's illegal search and seizure claim because it has a preclusive effect in this litigation. *See James v. Heritage Valley Fed. Credit Union*, 197 Fed. Appx. 102, 105 (3d Cir. 2006) (finding that principles of collateral estoppel apply to constitutional claims and "[a] finding in a prior criminal proceeding may estop an individual from litigating the same issue in a subsequent civil proceeding."). Accordingly, Count III is dismissed.

### D. Fifth Amendment – Failure to Mirandize (Count IV)

Plaintiff asserts, in Count IV, that his Fifth Amendment right to protection from self-incrimination was violated when Officer Jackson questioned him about his employment at Long Branch Police Department before he was Mirandized. Count IV fails as a matter of law, and as such, summary judgment is appropriate as to this claim.

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself," U.S. CONST. amend. V, and this protection has been incorporated through the Fourteenth Amendment. *See Malloy v. Hogan*, 378 U.S. 1, 8 (1964). This privilege against self-incrimination has been interpreted to protect against the "inherently compelling pressures [of interrogation] which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Miranda v. Arizona*, 384 U.S. 436, 467 (1966). To protect against these pressures, Miranda warnings must be given before a ***person in custody*** is interrogated by police. *Id*. Answers received before the administration of these warnings when a person is in custody are presumed compelled, and are therefore, precluded from being used against the individual. *See Oregon v. Elstad*, 470 U.S. 298, 317 (1985).

Here, Plaintiff maintains that his privilege against self-incrimination was violated because he was questioned about his I.D. card without first being Mirandized by Officer Jackson. First,

11

Plaintiff was not in custody when Officer Jackson stopped Plaintiff's vehicle and began his routine inquiry. To be clear, Plaintiff was also not in custody when he volunteered his expired I.D. card to Officer Jackson, nor was Plaintiff in custody when he informed Officer Jackson, on multiple occasions, that he worked for the Long Branch Police Department. Because Plaintiff was not yet in custody, Officer Jackson was not required to issue Plaintiff his Miranda rights at that time. Accordingly, Plaintiff's insistence that he should have been Mirandized before Officer Jackson began his questioning during the traffic stop lacks any basis in law. This claim, therefore, is dismissed.[5]

### E. Abuse of Process (Count V)

Plaintiff alleges that Officer Jackson used the legal process to further his ulterior motives for which the process was not intended. Plaintiff's abuse of process claim consists only of conclusory statements, which are neither supported by his own pleadings, nor do they address the elements required to establish an abuse of process claim.

"A section 1983 claim for malicious abuse of process lies where prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law." *Rose v. Bartle*, 871 F.2d 331, 350 n.17 (3d Cir. 1989) (internal citations and quotations omitted); *Ference v. Twp. of Hamilton*, 538 F. Supp. 2d 785, 798 (D.N.J. 2008). A proper claim for abuse of process under § 1983 requires proof of two elements. First, a plaintiff must show an existence of an ulterior motive. *Heck*, 512 U.S. at 486 (holding it is "not the wrongfulness of the prosecution, but some extortionate perversion of lawfully initiated process to illegitimate ends."). Second, that there was

---

[5] Moreover, at the time of the municipal hearing in July 2012, the Municipal Judge determined that before being interviewed, Plaintiff was read his Miranda rights, and thus, the statements made by Plaintiff were "not coerced or forced or twisted in any way." Tr. T59:7-10. As the criminal court already decided that Plaintiff was properly advised of his Miranda rights, Count IV is also barred by the doctrine of collateral estoppel. *See Allen v. McCurry*, 449 U.S. 90, 94 (1980).

"some further act after the issuance of process representing the perversion of the legitimate use of process." *Stolinski v. Pennypacker*, 772 F. Supp. 2d 626, 644-45 (D.N.J. 2011).

Here, Plaintiff has not presented any evidence to satisfy these elements. At best, Plaintiff has only alleged that Officer Jackson had been surveilling him in the past. Even if that were true, that is not sufficient to prove an abuse of process claim. In fact, under the set of facts that Plaintiff has alleged, he cannot sustain an abuse of process claim. For one, Plaintiff does not allege, let alone establish, that Officer Jackson had an ulterior motive. While Plaintiff suggests that Officer Jackson knew the charges against Plaintiff were "baseless," and that Officer Jackson misrepresented the facts in order to arrest Plaintiff, these statements are not supported by any evidence in the record on this motion. Nevertheless, "there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant." *Marable v. W. Pottsgrove Twp.*, 176 Fed. Appx. 275, 281-82 (3d Cir. 2006). Indeed, Officer Jackson, with probable case, arrested Plaintiff for the purpose of charging him with certain crimes, and Plaintiff was convicted because of these charges. Hence, there can be no doubt that Officer Jackson initiated the process for the purpose for which it was intended. Even if Officer Jackson had some ill-will against Plaintiff, that fact is not sufficient to establish an abuse of process claim. Because there is no evidence of some ulterior motive or further acts, Plaintiff's abuse of process claim must fail.

### F. IIED (Count VII) and Defamation (Count VIII)

Plaintiff asserts two state law claims: intentional inflection of emotional and psychological distress and defamation. Defendants move for summary judgment on these state tort claims for failure to file a tort claim notice. Under the New Jersey Tort Claims Act, when asserting a state tort claim against a public entity or a public employee, a plaintiff must give notice of the claim

13

within ninety days after the cause of action has accrued. *See* N.J.S.A. 59:8-8; *Konah v. City of Newark*, No. A-4000-09T3, 2011 N.J. Super. Unpub. LEXIS 1079, at *4 (App. Div. Apr. 29, 2011). This notice requirement applies to common law intentional torts claims, *Ptaszynski v. Uwaneme*, 371 N.J. Super. 333, 343 (App. Div. 2004), as well as negligent conduct, *Velez v. City of Jersey City*, 180 N.J. 284, 292-93 (2004), and plaintiffs who do not comply with this requirement are "forever barred" from recovering on their claim. *See* N.J.S.A. § 59:8-8. Notice is important because state agencies can have the "opportunity to investigate the claims, and take disciplinary or other appropriate action to rectify inappropriate behavior or flawed practices...." *Mawhinney v. Francesco*, No. 08–3317, 2010 U.S. Dist. LEXIS 62439, at *29 (D.N.J. Jun. 22, 2010) (quoting *Velez v. City of Jersey City*, 180 N.J. 284, 293 (2004)).

Here, Plaintiff neither alleges that he submitted a tort claim notice to Defendants, nor has he provided any notice on this motion. Because Plaintiff failed to submit such notice before the ninety-day time period proscribed by the statute, Plaintiff's state claims are barred. Therefore Counts VII and VIII are dismissed.

## CONCLUSION

For the above stated reasons, Defendants' Motion for Summary Judgment is **GRANTED.** An appropriate Order shall follow.

Dated: July 15, 2014 /s/ Freda L. Wolfson
Hon. Freda L. Wolfson
United States District Judge